## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN JOHNSON, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.  12-4025 |
| CAROLYN W. COLVIN, | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM

BUCKWALTER, S.J.                                                    July 8, 2014

Currently pending before the Court are Plaintiff John Johnson's Objections to the Report

and Recommendation of United States Magistrate Judge Henry S. Perkin.  For the following

reasons, the Objections are overruled.

## I.       PROCEDURAL HISTORY

On April 2, 2008,  Plaintiff John Johnson protectively filed an application for

Supplemental Security Income[1] ("SSI") pursuant to Title XVI of the Social Security Act, 42

U.S.C. § 1381, et seq.  (R. 124–27.)[2]  His claim alleged disability, since April 2, 2008, due to

back problems, depression, a heart condition, and high blood pressure.  (Id. at 147–58.)  The state

agency denied Plaintiff's application on February 23, 2009.  (Id. at 58–62.)  Plaintiff timely

requested a hearing before an administrative law judge ("ALJ").  (Id. at 63–66.)  Following the

---

[1]  Plaintiff also filed a claim for disability insurance benefits, but was denied on other grounds.  That decision is not at issue here.

[2]  For ease of discussion, citations to the administrative record will be referenced as "R. [page number]."

hearing—at which Plaintiff and a vocational expert testified—ALJ Christine McCafferty issued a decision, dated November 18, 2010, deeming Plaintiff "not disabled." (Id. at 12–22, 27–51.) Plaintiff then filed an appeal and submitted additional records. (R. 4–8.) On May 15, 2012, the Appeals Council denied Plaintiff's request for review, (id. at 1–3), making the ALJ's ruling the final decision of the agency. See 20 C.F.R. § 416.1572.

Plaintiff initiated the present civil action in this Court on July 13, 2012. His Request for Review set forth four alleged errors as follows: (1) the ALJ accorded insufficient weight to the opinion of the treating psychiatrist; (2) the ALJ erred in giving weight to the assessments of the Social Security adjudicators; (3) the ALJ made speculative inferences and ignored the evidence of record; and (4) remand is appropriate for consideration of new and material evidence. On March 31, 2014, United States Magistrate Judge Henry S. Perkin issued a Report and Recommendation ("R&R") recommending that Plaintiff's Request for Review be denied and that judgment be entered in favor of Defendant.

Plaintiff filed Objections to the R&R on April 8, 2014, asserting that: (1) the Magistrate Judge improperly found that the ALJ correctly discounted the assessment of treating psychiatrist Dr. Wilf; (2) the Magistrate Judge incorrectly upheld the ALJ's improper reliance on the state agency medical analyst Paul Marchelitis and state consultative examiner Dr. Srivastava, M.D.; and (3) the Magistrate Judge incorrectly found that the additional evidence submitted to the Appeals Council and District Court did not warrant remand. Defendant submitted a Response to the Objections on April 22, 2014 and Plaintiff filed a Reply Brief on April 25, 2014, making this matter ripe for judicial review.

## II.    STANDARD OF REVIEW[3]

### A.    Standard for Judicial Review of an ALJ's Decision

It is well-established that judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000).  "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564–65 (1988)).  When making this determination, a reviewing court may not undertake a de novo review of the Commissioner's decision and may not re-weigh the evidence of record.  Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  In other words, even if the reviewing court, acting de novo, would have decided the case differently, the Commissioner's decision must be affirmed when supported by substantial evidence.  Id. at 1190–91; see also Gilmore v. Barnhart, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (holding that the court's scope of review is "'limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact'") (quoting Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001)).

### B.    Standard of Review of Objections to a Report and Recommendation

Where a party makes a timely and specific objection to a portion of a report and recommendation by a United States Magistrate Judge, the district court is obliged to engage in de

---

[3]  The five-step sequential analysis for assessing a disability claim was adequately summarized by the Magistrate Judge.  In lieu of repeating that discussion, the Court incorporates by reference that portion of the R&R into this Memorandum.

novo review of only those issues raised on objection. 28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In so doing, a court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1). The court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations. See United v. Raddatz, 447 U.S. 667, 676 (1980).

III.    DISCUSSION

   A.    Whether the ALJ Correctly Discounted the Assessment of Treating
         Psychiatrist Dr. Wilf

Plaintiff's first objection focuses on the ALJ's treatment of Dr. Wilf, Plaintiff's treating psychiatrist. Under applicable regulations and controlling case law, "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2)). A treating source's opinion on the issue of the nature and severity of a claimant's impairment will be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). The factors to be considered in assigning the appropriate weight to a medical opinion include: length of treating relationship and frequency of examination, nature and extent of treating relationship, supportability, consistency, specialization, and other relevant factors. 20 C.F.R. § 416.927(c)(2).

4

In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation or lay opinion." Morales v. Apfel, 225 F.3d 310, 317–18 (3d Cir. 2000) (quotations omitted).  Further, when disregarding such an opinion, the ALJ must explain on the record his reasons for doing so.  Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986).  It cannot be "for no reason or for the wrong reason." Morales, 225 F.3d at 317 (quotations omitted).  At the end of the analysis, however, "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and [residual functional capacity] determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011).  "The law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." Brown v. Astrue, 649 F.3d 193, 197 n.2 (3d Cir. 2000).

In this case, the ALJ set forth the following summary and analysis of Dr. Wilf:

On October 21, 2008 . . . the claimant was evaluated by a doctor at the Warren E. Smith Mental Health, Mental Retardation Center (hereinafter "WES") whose signature is not legible [Dr. Wilf].  He completed a mental status examination of the claimant and noted that the claimant's

General Appearance/Behavior: Revealed a frustrated African-American male.
Speech: Okay.
Thought Process & Content (including Suicidality/Homicidality): Negative suicidality and homicidality.
Mood & Affect: Depressed.
Perceptual Disturbances: Negative.
Attention: Alert.
Orientation: Oriented x3.
Memory: Short term: Grossly intact.
Delayed: Grossly intact.
Long term: Grossly intact.
Concentration: Intact.

5

> Abstract thinking: Poor.
> Fund of Information: Poor.
> Judgment & Insight: Poor.
>
> The doctor assigned the claimant GAF of 45. The DSM-IV describes a GAF score of 45 as indicating serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). However, I find little support for this conclusion.
>
> On June 2, 2010 . . . the claimant was evaluated by this same WES doctor on the Psychiatric Review Technique form as meeting the requirements for Listing 12.03: Schizophrenic. Paranoid and other Psychotic Disorders and Listing 12.04: Affective Disorders. The clamant was noted as having "marked" limitations in his activities of daily living; his social functioning; and his concentration, persistence or pace; and, with 3 or more episodes of decompensation. However, I also note that this doctor wrote that the claimant has a "History without medication of auditory hallucination and presenting ideation"

(R. 17.)

On review, the Magistrate Judge found that substantial evidence supported the ALJ's conclusion. First, he remarked that Dr. Wilf's treatment notes did not show that Plaintiff's symptoms were of Listing-level severity. Rather, to the contrary, the notes reflected a decrease in the frequency and severity of many of Plaintiff's symptoms and Dr. Wilf's pursuit of a steady, conservative course of treatment with no mention of a schizoaffective disorder, three episodes of decompensation, or any of the other symptoms on the Psychiatric Review Technique form. Second, the Magistrate Judge agreed with the ALJ's finding that Dr. Wilf's opinion was inconsistent with and unsupported by the other medical evidence of record, given that Plaintiff's clinical psychologist, Denise Holland Ph.D., and his two therapists, Kiyomi Hasimoto, M.A., and Kyle Schultz, M.A., did not document symptoms of Listing-level severity. Indeed, Dr. Holland only diagnosed Plaintiff with adjustment disorder with anxiety and moderate depression. Third, the Magistrate Judge agreed with the ALJ's decision to accord greater weight to the contradictory

opinions of one-time examining psychologist Kenneth Hopkins and state agency psychologist
Peter Garito.  Finally, the Magistrate Judge commented that Plaintiff's substantial daily activities
undermined Dr. Wilf's opinion, including Plaintiff's daily chores, attendance at the movies,
church, and sporting events, and vocational job training to become an electrician or plumber.
Ultimately, the Magistrate Judge concluded that substantial evidence supported the ALJ's
evaluation of Dr. Wilf's medical opinion evidence in assessing whether Plaintiff met a mental
health-related Listing.

      Plaintiff now contests the propriety of this analysis on several grounds.  First, he asserts
that the Magistrate Judge considered evidence outside the scope of the ALJ's opinion in an effort
to justify the ALJ's conclusion as to Dr. Wilf.  He contends that under Third Circuit precedent, a
reviewing District Court may not, upon "recognizing the ALJ's failure to consider all of the
relevant and probative evidence, attempt[] to rectify this error by relying on medical records
found in its own independent analysis, and which were not mentioned by the ALJ."  (Pl.'s
Objections 2 (quoting Fargnoli v. Halter, 247 F.3d 34, 44 n.7 (3d Cir. 2001)).)

      This argument, however, improperly restricts the Court's scope of review.  It is well
established that "[t]he grounds upon which an administrative order must be judged are those
upon which the record discloses that its action was based."  SEC v. Chenery Corp., 318 U.S. 80,
87 (1943).  As such, "'[t]he ALJ's decision must stand or fall with the reasons set forth in the
ALJ's decision;' the Commissioner may not offer a post-hoc rationalization."  Keiderling v.
Astrue, No. Civ.A.07-2237, 2008 WL 2120154, at *3 (E.D. Pa. May 20, 2008) (quoting Newton
v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000)).  Nonetheless, the court is not required "to read the
ALJ's opinion in a vacuum."  Knox v. Astrue, No. Civ.A.09-1075, 2010 WL 1212561, at *7

(W.D. Pa. May 26, 2010).  The standard of review still requires that the reviewing court examine the record as a whole to determine whether the ALJ's reasoning is supported by substantial evidence.  Gaul v. Barnhart, No. Civ.A.07-351, 2008 WL 4082265, at *5 n.6 (E.D. Pa. Aug. 25, 2008).  "A 'comprehensive explanation' need not always accompany a decision to reject a piece of probative evidence, since 'a sentence or short paragraph would probably suffice' in most instances."  Knox, 2010 WL 1212561, at *7 (quoting Cotter v. Harris, 650 F.2d 481, 482 (3d Cir. 1981)).  Moreover, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."  Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989).  Where there is error by the ALJ, but the error would not affect the outcome of the case, remand is not warranted.  Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

In the present case, the ALJ expressly mentioned each of the pieces of evidence cited by the Magistrate Judge as support for her decision.  The ALJ expressly noted that Plaintiff maintained a conservative course of treatment under Dr. Wilf and had never been hospitalized for mental health issues.  (R. 16, 19.)  Further, she fully discussed the opinions rendered by Dr. Hopkins, Dr. Holland, Dr. Garito, and the State Agency psychological consultant.  (Id. at 17–20.)  Finally, the ALJ thoroughly reviewed Plaintiff's significant activities of daily living.  (Id. at 16, 19.)  For each of these pieces of evidence, ALJ expressly indicated the weight she accorded them.  While the R&R presented a more thorough explanation of how such evidence undermined Dr. Wilf's assessment, that explanation—far from being a post-hoc rationalization—did nothing more than expand upon the explicit underpinnings of the ALJ's ruling.

Second, Plaintiff argues that the evidence cited by the ALJ and the Magistrate Judge

8

cannot overcome the deference to which a treating physician's opinion is entitled.  Specifically, Plaintiff argues that (a) the treatment notes do not show consistent improvement or that he could handle the stress of working; (b) no other physician had as significant a longitudinal picture as Dr. Wilf; (c) the assessments of Dr. Holland, Dr. Hopkins,[4] Dr. Garito, and Plaintiff's therapists were not entitled to more weight since they were not comprehensive; and (d) Plaintiff's activities of daily living did not evidence an ability to sustain a regular work schedule.

Again, the Court must disagree.  As the United States Court of Appeals for the Third Circuit has made clear, although "treating physicians' opinions are assumed to be more valuable than those of non-treating physicians," this "assumption does not turn on impermissibly mechanical deference to the treating physician's opinion." Cyprus Cumberland Res. v. Dir., Office of Workers' Compensation Programs, 170 F. App'x 787, 792 (3d Cir. 2006) (quotation omitted).  An ALJ's decision to reject the opinion of a treating physician is proper where the opinion is unexplained, where the physician's own treatment records do not support his/her opinion, and where the record contains medical evidence contrary to his/her opinion.  See Grogan

---

[4] Plaintiff also argues that the ALJ and Magistrate Judge discounted Dr. Hopkins's conclusion that Plaintiff had a Global Assessment of Functioning ("GAF") score of thirty-five—indicative of some impairment in reality testing or communication or major impairment in several areas—yet credited Dr. Hopkins's notation of moderate limits in work-related functioning.  The Court finds no error in this ruling.  The Third Circuit has held that a "GAF score does not have a direct correlation to the severity requirements of the Social Security mental disorder listings." Gilroy v. Astrue, 351 F. App'x 714, 715–16 (3d Cir. 2009).  "District courts within this circuit have further recognized that while GAF scores can indicate an individual's capacity to work, they also correspond to unrelated factors, and absent evidence that a GAF score was meant to indicate impairment of the ability to work, a GAF score does not indicate disability." Bracciodieta-Nelson v. Comm'r of Social Security, 782 F. Supp. 2d 152, 165 (W.D. Pa. 2011) (citing cases).  In this matter, Dr. Hopkins gave Plaintiff a low GAF score, but nonetheless found nothing more than moderate limitations on his activities of daily functioning. (R. 315–22.)  As such, the ALJ appropriately disregarded the GAF score as not indicating impairment of the ability to work.

9

v. Comm'r of Soc. Sec., 459 F. App'x 132, 137–38 (3d Cir. 2012); see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The ALJ need not accept an opinion of a physician—even a treating physician—if it is conclusory and brief and is unsupported by clinical findings."); Santiago v. Astrue, No. Civ.A.11-3650, 2012 WL 1080181, at *9 (E.D. Pa. Mar. 28, 2012) ("[I]n light of the relatively cursory and checklist format of [the treating physician's] opinion, the sparsity of the support for her conclusions in her own records, and the contradictory nature of the medical evidence from [the plaintiff's] treating therapist, the Court holds that the ALJ was not required to attribute more than 'little to no weight' to [the treating physician's] opinion of [the plaintiff's] mental limitations."). Further, as the Third Circuit has observed, "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank"—as is the case here—"are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). This is particularly true when those residual capacity reports are "unaccompanied by thorough written reports." See Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986).

In this case, neither of Dr. Wilf's two assessments were accompanied by any supporting explanation. The October 21, 2008 report consisted of three pages, one-and-a-half of which simply detailed Plaintiff's medical, psychiatric, and family history. The remaining portion of the report contained brief, one-to-two word notations about Plaintiff's appearance, speech, thought process, mood and affect, attention, orientation, memory, concentration, abstract thinking, fund of information, and judgment & insight. (Id. at 290–91.) It then concluded with some diagnosis codes, a GAF scoring of 45, and a simple recommendation to "[c]ontinue treatment." (Id. at 291.) The January 26, 2009 evaluation was nothing more than a checklist report with no written explanation. (Id. at 477–90.) When such reports are contrasted with the thorough

biopsychosocial evaluation of Dr. Holland and the written progress notes of Plaintiff's therapists, it is clear that the ALJ was entitled to accord more weight to such latter reports.  The ALJ's decision to do so was bolstered by the additional contradictory reports of the state agency evaluators, Plaintiff's conservative treatment course, Plaintiff's activities of daily living, and Plaintiff's own testimony, each of which indicated that Plaintiff was far less disabled than Dr. Wilf suggested.  At this level of judicial consideration, the Court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." Gilmore v. Barnhart, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (quotations omitted).  Under this standard of review, the Court finds no error in the ALJ's decision.

Third and finally, Plaintiff contends that the Magistrate Judge only determined that Dr. Wilf's opinion was not conclusive at Step Three of the sequential analysis, but did not consider whether the ALJ appropriately disregarded Dr. Wilf's assessments when formulating Plaintiff's residual functional capacity ("RFC").  The Court finds no merit in this argument.  The ALJ expressly indicated that he gave little weight to Dr. Wilf's conclusions, meaning that he did not consider Dr. Wilf's assessments either with respect to the Listing analysis or the RFC analysis. Although the Magistrate Judge only expressly affirmed the denial of benefits at Step Three, it stands to reason that Dr. Wilf's assessment—having already been rejected—need not have been included in an RFC analysis and thus would not support a disability determination at Step Five.

In short, the Court finds that substantial evidence supports the ALJ's assessment of Dr. Wilf's opinions.  In turn, the Magistrate Judge's concurring R&R is equally well founded. Therefore, Plaintiff's objection on this point is overruled.

11

**B.**    **Whether the Magistrate Judge Incorrectly Found that the ALJ Did Not Improperly Rely on State Agency Medical Analyst Paul Marachelitis and Consultative Examiner Dr. Srivastava, M.D.**

Plaintiff's next objection concerns the ALJ's evaluation of his back impairment.  With respect to this impairment, the ALJ found as follows:

Lumbar Spine X-rays taken July 24, 2007 . . . showed: "Degenerative disc disease at L4-5 and possibly the L5-S1 level, no acute bony abnormality."

Then orthopedic surgeon, Dr. Eric Williams performed a series of lumbar spinal procedures on the claimant on May 6, 2010 . . . including a "minimally invasive L3-L4-L5 laminotomy as well as bilateral partial facetectomies, right partial facetectomy L3-L4-L5, diskectomy from L3-L4, L4-L5, instrumented posterior spinal fusion from L3-L5, posterolateral fusion from L3-L5 with VITOSS and a right posterior iliac crest aspirate.  He also had a transforaminal lumbar interbody fusion from L3-L4 to L4-L5 with Concord cages . . . The patient was given a Duragesic patch postoperatively for pain control.  The patient was seen by Physical Therapy and deemed appropriate to be discharged home with home physical therapy."   The claimant was then discharged from the hospital on May 9, 2010.

The State Agency medical analyst, though not medically trained, but extremely knowledgeable in the disability requirements of the Social Security Regulations, found the claimant was able to lift and carry ten pounds frequently and twenty pounds occasionally, could stand, sit, or walk for about six hours out of eight hours during a workday and had unlimited push/pull abilities.  This would render a finding of a residual functional capacity to perform the full range of light work.  However, the analyst also found that the claimant had additional restrictions as he can only occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, but he should never climb ladders, ropes or scaffolds; and he should totally avoid hazards such as moving machinery and heights. . . .

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible.

The claimant was injured in a bus accident when another vehicle rear ended the bus.  He sustained right knee trauma with pain and complained of lower back pain.  He had back surgery in May 2010; but continues to have pain.  He is walking with a cane and said he can only walk two blocks before having to stop, and said he can only carry five pounds.  I note that lumbar spine x-rays taken July 24, 2007 . . . showed degenerative disc disease at L4-5 and possibly the L5-S1 level, but no acute bony

abnormality.  Dr. Eric Williams then performed a series of lumbar spinal procedures on the claimant on May 6, 2010 . . . and after a brief stay, the claimant was then discharged from the hospital on May 9, 2010.  Considering that on February 23, 2009, prior to these surgeries, the State Agency medical analyst had found nothing that would prevent the claimant from performing a range of light work . . . then these surgeries should have left him with even a better prognosis.

(R. 18–19.)

In his Request for Review, Plaintiff argued that the ALJ erred in relying upon the findings of the State Agency medical analyst, Paul Marchelitis, because the analyst's findings were entitled to no evidentiary weight.  The Magistrate Judge rejected this argument, noting that, as part of a program intended to streamline the administrative review process, the Commissioner used a prototype process known as the "single decisionmaker model."  In this case, Mr. Marchelitis was the single decisionmaker and completed a physical RFC form assessing Plaintiff with various limitations, which the ALJ considered for purposes of her own ruling.  The Magistrate Judge went on to concldue that the ALJ did not mistake Mr. Marchelitis for a doctor, did not assign weight to his findings, and did not rely upon his findings in assessing Plaintiff's physical residual functional capacity.  Rather, the ALJ weighed findings of medical sources to determine whether those opinions were supported by the record.  Ultimately, the Magistrate Judge remarked that the ALJ's physical residual functional capacity assessment, which limited Plaintiff to a limited range of sedentary work with a sit/stand option, was more restrictive than that of Mr. Marchelitis.  Moreover, the Magistrate Judge noted that the assessment was supported by the findings of consultative examiner Brij Srivastava, M.D., who examined Plaintiff approximately one week before Mr. Marchelitis completed the physical RFC form.

Plaintiff now re-asserts that the ALJ improperly used Mr. Marchelitis's findings to assess the evidence.  Plaintiff also contests the ALJ's reliance on the consultative examination by Dr.

13

Srivastava over the report of Dr. Williams.  The Court deems both of these contentions meritless.

The "single decisionmaker model," which follows procedures promulgated pursuant to 20 C.F.R.

§ 416.1406(b)(2), provides as follows:

> In the single decisionmaker model, the decisionmaker will make the disability determination and may also determine whether the other conditions for entitlement to benefits based on disability are met.  The decisionmaker will make the disability determination after any *appropriate* consultation with a medical or psychological consultant.  The medical or psychological consultant will not be required to sign the disability determination forms we use to have the State agency certify the determination of disability to us. . . .

20 C.F.R. § 416.1406(b)(2) (emphasis added).  It is well established that the RFC assessment of a

single decisionmaker is entitled to no evidentiary weight.  Yorkus v. Astrue, No. Civ.A.10-2197,

2011 WL 7400189, at *4 (E.D. Pa. Feb. 28, 2011).  As properly found by the Magistrate Judge,

the ALJ's mention of Mr. Marchelitis's report was made in an effort to implement this new

model for streamlining social security decisions.  Mr. Marchelitis had consulted with a licensed

physician—Dr. Srivastava—and rendered an opinion under the regulations, which the ALJ then

properly considered as guidance.  Norman v. Barnhart, No. Civ.A.04-4969, 2006 WL 891066, at

*1 (E.D. Pa. Apr. 3, 2006).  In doing so, the ALJ did not abdicate his responsibility to review and

weigh the medical evidence of record, but rather expressly addressed the medical reports and

evidence of Plaintiff's medical treatment for his back.  Moreover, nothing in the record suggests

that the ALJ elevated either Dr. Srivastava's opinion or Dr. Marchelitis's opinion above Dr.

Williams's opinion.  Indeed, although the ALJ indicated his belief that Plaintiff should have had

a better residual functional capacity after surgery than that given to him by Mr. Marchelitis

before surgery, the ALJ nonetheless *further* restricted Plaintiff by limiting him to sedentary work

with a sit/stand option.  Such a decision to do so could only have been based on other medical

evidence of record.  Accordingly, the Court overrules this objection.

      **C.**      **Whether the Magistrate Incorrectly Refused to Grant a New Evidence Remand**

Finally, Plaintiff contests the Magistrate Judge's refusal to remand the case for consideration of new evidence.  In order for the ALJ to consider any evidence which a claimant did not offer at the initial proceeding, the claimant must show that (1) the evidence being proffered is new, (2) the evidence is material, and (3) there is good cause for failing to incorporate the evidence into the administrative record.  Szubak v. Sec'y of HHS, 745 F.2d 831, 833 (3d Cir. 1984).  All three prongs must be satisfied for the additional evidence to be admitted. Id.  The Third Circuit has held that in order to be new, evidence must not be merely cumulative of what is already in the record.  Id. at 833.  Evidence is material if it is "relevant and probative" and there is a "reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination."  Id.  Crucially, the evidence must relate to the time period for which benefits were denied and must "not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition."  Id.  Moreover, the reasonable possibility standard "while requiring more than a minimal showing, need not meet a preponderance test."  Newhouse v. Heckler, 753 F.2d 283, 287 (3d Cir. 1985).  Finally, good cause must also be shown for failing to submit additional evidence during the administrative proceeding.  Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001).  The underlying purpose of the good cause requirement is to prevent an "end-run method of appealing an adverse ruling from the Secretary."  Szubak, 745 F.2d at 834 (holding that the requirement prevents claimants from having more than one bite at the apple).  The good cause element requires a claimant to show "some justification" for failing to submit the evidence, id., or to have "good reason" for failing to

submit the evidence to the ALJ in the first place.  Matthews, 239 F.3d at 595.  The burden of

demonstrating good cause rests with the plaintiff.  Id.; Shuter v. Astrue, 537 F. Supp. 2d 752, 758

(E.D. Pa. 2008).

In his Request for Review, Plaintiff sought a remand for consideration of evidence

submitted to the Appeals Council after the ALJ's decision.  This evidence consisted of medical

records that both pre-dated and post-dated the ALJ's decision.  With respect to the medical

records that post-dated the ALJ's decision, the Magistrate Judge determined that the records from

February and April 2011 revealed that Plaintiff was doing quite well, managed his back pain with

pain medications, and did not feel like he needed to have steroid injections.  The remaining

"post-dated" records, according to the Magistrate Judge, could not meet the materiality

requirement because they did not relate to the time period for which benefits were denied.

Rather, they related to the onset of a new back injury over a year after Plaintiff's surgery in

September 2011, when he tried to move a heavy couch.  As to the pre-dated records, the

Magistrate Judge concluded that they could not be considered new because (1) they existed prior

to the ALJ's decision and were available to Plaintiff; (2) Plaintiff did not show good cause for

failure to produce these documents prior to the ALJ's determination; and (3) Plaintiff did not

show that these additional medical records would have changed the outcome of the decision.

Accordingly, the Magistrate Judge determined that Plaintiff was not entitled to a remand for

consideration of new evidence.

Plaintiff now posits objections to the Report and Recommendation with respect to two

pieces of the new evidence.  First, he asserts that the new evidence includes a February 17, 2011

letter from Dr. Ahsan, copied to surgeon Dr. Williams, documenting positive straight leg raising

and significant tenderness in the lumbar spine.  (R. 576–77.)  This letter, according to Plaintiff,

concerns Plaintiff's condition since surgery in May 2010, indicates that Plaintiff's pain has been

progressively worse since surgery, and is consistent with Plaintiff's testimony that he could only

carry five pounds and walk two blocks after surgery.  Second, Plaintiff challenges the Magistrate

Judge's finding that there was no good cause for the Plaintiff's failure to produce Dr. Williams's

pre-dated report.  Specifically, he asserts that the Magistrate Judge "assume[d] that because the

form was dated a month prior to the hearing that the form was actually in Plaintiff's possession at

the time of the hearing.  There is no evidence that this is the case.  There is also no reason why

Plaintiff would hold back an RFC form by a treating physician that limits Mr. Johnson to less

than sedentary work."  (Pl.'s Objections 10.)  Further, Plaintiff claims that there is a reasonable

likelihood that Dr. Williams's report would have changed the outcome of this case because it is a

statement by the treating surgeon about Plaintiff's condition after surgery.

       The Court finds no merit to either objection.  First, as to the February 17, 2011 letter from

Dr. Ahsan, there is no reasonable likelihood that it would have changed the outcome of the case.

Dr. Ahsan stated, in pertinent part, as follows:

> I discussed Mr. Johnson's options with him and for now I have taken the liberty of
> starting him on a regimen comprising a combination of Vicodin, Relafen and
> Flexeril.  He is to follow up with me in four weeks to report on his progress.  He is
> to also see Dr. Eric Williams to see if any surgical interventions need to be
> contemplated for the substantial residual back pain that he is experiencing.  For the
> longer term, after Mr.  Johnson has seen Dr. Williams, I may consider a steroid
> injection to the lumbar spine under fluoroscopic guidance and possibly even a trial
> of spinal cord stimulation to try and improve the quality of his life.

(R. 576–77.)  Notably, however, this letter does not stand alone.  Per Dr. Ahsan's instructions,

Plaintiff returned to Dr. Williams in April 2011, after which Dr. Williams wrote to Dr. Ahsan as

follows:

17

> Mr. Johnson is here for further follow-up status post minimally invasive L-4 to S-1 laminectomy and instrumented fusion.  Although he has no complaints of leg pain, he still has significant residual back pain that was unsuccessfully treated with Tylenol #3's and Relafen.  However, he has since seen you and you placed him on Vicodin and Flexeril, in addition to Relafen and he states that those medications have satisfactorily alleviated his remaining back pain.
>
> After discussion with him, I told him that he can just get those medications from me.  He feels that that medication is working well enough that he does not need to consider further epidural steroid injections.  Certainly, those medications I can provide him with.  Therefore, I told him he is to contract [sic] my office only for these medications and I will refer him back to you if these medications become unsuccessful and I thought maybe he should consider another round of injections.  He is agreeable to this and therefore he will just keep his appointment with you, ostensibly not for medications but just for further follow-up to ensure that he does not in fact need the injections.  He will follow-up in my office with my PA in six months.

(R. 578.)  Given this evidence from Plaintiff's treating surgeon that Plaintiff's pain symptoms are controlled with pain medicine and that no further procedures are necessary, the Court does not find that the ALJ's consideration of the letter from Dr. Ahsan would have altered the ALJ's finding that Plaintiff was limited to sedentary work with a sit/stand option.

Second, as to Dr. Williams's Physical Residual Functional Capacity report, the Court agrees with the Magistrate Judge that Plaintiff has failed to establish good cause for not producing it to the ALJ.  Plaintiff's counsel first faxed the form to Dr. Williams on September 29, 2010.  (R. 572.)  At the hearing on October 8, 2010, Plaintiff's counsel indicated that he had not yet received all records from Dr. Williams.  (R. 31.)  At the close of the hearing, the ALJ indicated that she would leave the record open for any additional evidence that Plaintiff's counsel could gather.  (R. 50.)  Dr. Williams signed and dated the completed report on October 22, 2010.  (R. 572–75.)  Yet, as of the date of the ALJ's decision—November 18, 2010—the report had not been submitted to the ALJ.  Although Plaintiff argues that there was no evidence in the record that the hearing form was actually in his possession at the time of the hearing, (Pl.'s Objections

18

10), the burden falls upon Plaintiff to prove that he did not have and could not have produced the report to the ALJ.  At no point does Plaintiff explain when he received the report or why he could not submit it to the ALJ in a timely fashion.  As noted by the Third Circuit, remanding a case for "new evidence" without requiring good cause would "turn the procedure into an informal, end-run method of appealing an adverse ruling" and may encourage claimants to "refrain from introducing all relevant evidence, with the idea of obtaining another bite of the apple."  Szubak, 745 F.2d at 834.  Having neglected to advance any reason for failing to "act with reasonable promptness" in submitting Dr. Williams's assessment before the record closed, 20 C.F.R. § 416.1540(b)(1), the Court finds that Plaintiff has not met the third requirement for a sentence six remand.

Nonetheless, even had Plaintiff established good cause, the Court concurs with the Magistrate Judge that Dr. Williams's checklist report, with little substantive explanation, would likely not have altered the outcome, particularly given its stark inconsistency with Dr. Williams's last treatment note.  (R. 571.)  The October 22, 2010 report, prepared without any additional examination, limited Plaintiff to sitting for no more than thirty minutes at a time, standing no more than fifteen minutes at a time, sitting/standing for no more than two hours in an eight hour workday, only occasionally lifting up to ten pounds, never stooping or crouching, and missing an average of two days of work per month due to his impairment.  (R. 572–75.)  Yet, as of Plaintiff's last visit on May 25, 2010, Dr. Williams opined that Plaintiff was "doing quite well," had "full activity tolerance during the day without significant pain," "no longer walk[ed] with a forward flexed posture," had 5/5 motor strength in his lower extremities, and was cleared to resume driving.  (R. 571.)  Moreover, one year later, Dr. Williams saw Plaintiff again and noted

19

that pain medication had satisfactorily alleviated Plaintiff's back pain and that further epidural steroid injections were unnecessary.  (R. 578.)  Given these contradictory progress notes based on actual examination, the Court finds that Dr. Williams's restrictive checklist report with no explanatory notations does not meet the "material" element of a sentence six remand.

In short, this Court agrees with the Magistrate Judge that nothing in the record warrants a new evidence remand.  Plaintiff has failed to show that the proposed evidence is new and material, and that he had good cause for failing to produce it in a timely manner.  Accordingly, the Court overrules this objection as well.

IV.    **CONCLUSION**

In light of the foregoing, the Court declines to sustain any of Plaintiff's objections.  The ALJ appropriately declined to accord controlling weight to the assessment of Plaintiff's treating psychiatrist.  Moreover, the ALJ did not improperly rely on the state agency medical analyst's opinion regarding Plaintiff's back impairment, but rather weighed the medical evidence of record and reached a determination that is well supported by substantial evidence.  Finally, the Court finds no error in the Magistrate Judge's refusal to order that the case be remanded for the consideration of new evidence.  Accordingly, the  Court will adopt the Report and Recommendation in its entirety.  An appropriate Order follows.